UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| **Anthony Dickerson,** | Civil Action No.: 9:25-cv-13347-DCN |
| Plaintiff, | |
| v. | COMPLAINT |
| **Experian Information Solutions, Inc.,** | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

1. This is an action brought by Plaintiff, Anthony Dickerson, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Beaufort Division because the Plaintiff resides in Beaufort County, and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Anthony Dickerson, is a resident and citizen of the State of South Carolina, Beaufort County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Experian Information Solutions, Inc., ("Experian") is an Ohio company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.     Defendant Experian is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.     Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.     Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

14.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Experian credit file; failed to reinvestigate Plaintiff's disputes; and failed to block fraudulent information after receipt of a police report. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. Plaintiff is the owner and operator of a funeral home which provides custom funeral services in the counties of Beaufort and Jasper.

16. In late 2023, Plaintiff discovered an unauthorized payment to Credit Strong on his bank statements. Plaintiff had no knowledge about Credit Strong and did not make this payment.

17. Thereafter, Plaintiff contacted Credit Strong directly and was informed by a representative that a line of credit in the amount of $2,500.00 had been opened in his name.

18. As Plaintiff did not apply for or open this line of credit, Plaintiff immediately instructed his bank to stop all payments to Credit Strong.

19. After doing some research, Plaintiff learned that Credit Strong was a division of Austin Capital. Accordingly, Plaintiff contacted Austin Capital directly and explained that a Credit Strong account had been opened in his name without his knowledge or permission.

20. On or about January 5, 2024, Plaintiff received a letter from Austin Capital's Operations Manager, Katy Moreno. The letter explained that Credit Strong is an online based program offered through Austin Capital designed to help consumers build credit by providing credit builder accounts to customers. The letter went on to state that the "Build $2,500" loan opened in Plaintiff's name was a 120-month term loan, and that the account was opened online and electronically signed on October 8, 2022. The letter also stated state that only three payments had been made on the loan and that the loan was closed on July 27, 2023. Finally, Plaintiff was told to forward a copy of any FTC identity theft report and/or police report he filed to Austin Capital.

21. On or about April 15, 2024, Plaintiff reviewed his Experian credit report and discovered several fraudulent accounts were reporting as his. Specifically, Austin Capital Bank and Merrick Bank were reporting accounts in Plaintif's name which he never opened or authorized. There were also accounts reporting with inaccurate information: Capital One Auto Finance, and Wakefield & Associates.

22. On or about May 17, 2024, Plaintiff filed an FTC Identity Theft Affidavit.

23. On or about May 17, 2024, Plaintiff file a complaint against Defendant with the Consumer Financial Protection Bureau (hereinafter "CFPB"), wherein he stated he had reviewed his Experian credit report and found several fraudulent accounts opened in his name. Plaintiff stated he was upset and distressed by this discovery because he was applying for credit at the same time. Plaintiff attached a copy of his FTC Affidavit to his CFPB complaint.

24. In July 2024, in an effort to get the fraudulent accounts removed from his credit reports as quickly as possible, Plaintiff hired Credit Beast, a credit repair service.

25. On or about July 12, 2024, through Credit Beast, two dispute letters were sent to Defendant. One letter providing the name and address that should be reporting on his credit report, and the second letter disputing Merrick Bank, Wakefield & Associates, Credit One Bank, Austin Capital Bank, and Capital One Auto Finance.

26. On or about July 15, 2024, Defendant provided its full response to Plaintiff's dispute to the CFPB. In its response, Defendant stated it had contacted the furnishers of the disputed accounts and asked them to verify the accuracy of the information. Defendant admittedly did not investigate Plaintiff's disputes. When the furnishers verified the

5

information, Defendant simply accepted the furnishers' response and the disputed accounts continued to be reported on the Plaintiff's credit report.

27. In August 2024, Plaintiff called Austin Capital a second time and again specifically informed Austin Capital that the account was a fraudulent account opened in his name without his knowledge or consent. During that call, Austin Capital informed Plaintiff he needed to provide them with a police report.

28. On or about August 28, 2024, Plaintiff filed a report with the Beaufort County Sheriff's Department.

29. On or about August 30, 2024, Plaintiff filed a second complaint against Defendant with the CFPB. In this complaint, Plaintiff requested that the Austin Capital Bank, Capital One Auto Finance, Wakefield & Associates, and Merrick Bank Corp., be deleted from his credit report.

30. On or about September 4, 2024, Plaintiff sent Austin Capital a copy of his police report and driver's license via certified mail. Austin Capital received Plaintiff's police report and driver's license on September 9, 2024.

31. On or about September 10, 2024, Plaintiff filed a second FTC Identity Theft Affidavit.

32. On or about September 12, 2024, Defendant responded to the CFPB that its response to Plaintiff's dispute was "in progress."

33. Through the use of Credit Beast's credit repair service, Plaintiff learned of other accounts on his Experian credit report that were reporting inaccurate information and/or were fraudulently opened in his name without his knowledge or permission.

6

34. On or about September 20, 2024, Plaintiff sent a letter to Defendant stating Defendant had violated the FCRA by re-aging the Merrick Bank account and requesting the account be deleted from his credit report immediately.

35. On or about October 2, 2024, Plaintiff sent three separate dispute letters to Defendant through Credit Beast, wherein Plaintiff disputed Austin Capital Bank, Capital One Auto Finance, and Merrick Bank Corp. Plaintiff's driver's license was provided at the bottom of that dispute letter. Plaintiff also disputed inquiries for Ally Financial, Capital One Auto Finance and OneMain.

36. On or about October 29, 2024, Defendant provided its full response to Plaintiff's dispute to the CFPB. In its response, Defendant stated it had contacted the furnishers of the disputed accounts and asked them to verify the accuracy of the information. Defendant admittedly did not investigate Plaintiff's disputes. When the furnishers verified the information, Defendant simply accepted the furnishers' response and the disputed accounts continued to be reported on the Plaintiff's credit report.

37. In or around January 2025, Plaintiff terminated Credit Beast's services.

38. On or about January 29, 2025, Plaintiff obtained a copy of his Experian credit report which continued to report the Austin Capital Bank account, Capital One Auto Finance, and Merrick Bank accounts.

39. On or about February 24, 2025, Plaintiff sent a dispute letter to Defendant. In his letter, Plaintiff stated he had been the victim of identity theft and fraud and learned that multiple accounts had been opened in his name without his permission. Plaintiff stated he had previously contacted Defendant about the fraudulent accounts; however they were still

reporting on his credit reports. Plaintiff also identified each of the accounts that had been opened in his name without his knowledge or permission. Specifically, Plaintiff disputed: Austin Capital Bank SSB, Acct. #8A6189**** and Merrick Bank, Account #412061801810, as fraudulent accounts opened in his name without his permission. Plaintiff also told Defendant that he had paid off the Merrick Bank account in full because it was holding up a business loan. Plaintiff also disputed the Capital One Auto Finance, Account #6206358026884****, as inaccurately reporting $27,718 as written off when it was paid in full by his insurance company. Finally, Plaintiff disputed a hard inquiry for OneMain as he did not apply for a loan with OneMain. Included with Plaintiff's letter was a letter from Capital One Auto Finance for Account No. 6206358026884 stating "Your Account is Paid in Full." Plaintiff also included the debit card receipt for North American Recovery confirming his payment of $1,464.18 on the Merrick Bank account. Plaintiff requested Defendant fix his credit report so it would be correct. Plaintiff also provided his Social Security number, date of birth, and address in his letter to Defendant.

40. Defendant received Plaintiff's dispute on March 4, 2025.

41. On March 11, 2025, at 4:56 p.m., Defendant emailed Plaintiff notifying him that his disputes had been opened and that it would take up to 30 days for Defendant to respond.

42. On March 11, 2025, at 5:39 p.m., Defendant sent a second email Plaintiff noting they were "just about done," and had made progress on his credit inquiry dispute and would update him when the final results were available.

43. On March 11, 2025, at 9:02 p.m., Defendant emailed Plaintiff a third time stating it was responding to his request that information on his credit report be blocked due to alleged

8

identity theft and stated, "In order to have the requested information removed from your personal credit report, you must send us a copy of a recent valid identity theft report." Plaintiff had previously provided this information to Defendant.

44. On or about March 28, 2025, Defendant forwarded Plaintiff its Investigation Results stating the Merrick Bank Corp account and the Austin Capital Bank accounts were both verified and updated, and the hard inquiries for OneMain were deleted. Defendant also included an updated copy of Plaintiff's credit report, which continued to report the fraudulent Merrick Bank account as a charged off account belonging to Plaintiff.

45. On April 11, 2025, at 4:07 p.m., Defendant emailed Plaintiff stating that his dispute results were ready.

46. On April 11, 2025, at 4:11 p.m., Defendant emailed Plaintiff a second time stating they were "just about done…," and would update Plaintiff when the final results were available.

47. Thereafter, on or about April 11, 2025, Defendant forwarded Plaintiff its Investigation Results stating the Austin Capital Bank account had been updated. Defendant also forwarded Plaintiff a copy of his updated credit report dated April 11, 2025. Upon review, the fraudulent Austin Capital account continued to be reported as a derogatory account belonging to Plaintiff. Likewise, the Merrick Bank account remained as a derogatory account belonging to Plaintiff.

48. On or about May 7, 2025, Plaintiff sent yet another dispute letter to Defendant wherein he again informed Defendant there were fraudulent and incorrect accounts appearing on his credit report. Plaintiff specifically stated he had been the victim of identity

theft and had accounts opened in his name without his permission, specifically, Austin Capital Bank, and Merrick Bank. Plaintiff also disputed Celtic Bank/Contfinco, account umber 534636, reporting as 30 days past due for March 2025, as it was not past due. Plaintiff also requested the address of 83 Red Tip Ct., Hilton Head Island, SC be deleted from his credit report as he had never lived at that address.  With his dispute, Plaintiff provided a copy of the police report he filed regarding the identity theft, a copy of the payment receipt to North American Recovery for payment of the Merrick Bank account, and a copy of his driver's license.

49.     Defendant received Plaintiff's dispute on May 15, 2025.

50.     On or about June 10, 2025, Defendant forwarded Plaintiff new Investigation Results showing the Austin Capital Bank and Celtic Bank/Contfinco accounts had both been verified and updated, and the Merrick Bank Corp account had again been certified as accurate.  The address of 83 Red Tip Ct., Hilton Head, SC was deleted.

51.     On or about June 11, 2025, Plaintiff sent yet another dispute letter to Defendant. In this letter, Plaintiff disputed the Austin Capital Bank and Merrick Bank accounts as fraudulent accounts opened without his knowledge or permission.  Plaintiff also disputed the Celtic Bank/Contfinco account as incorrectly reporting 30 days late, when it was never late. Plaintiff included another copy of his police report, as well as a copy of a receipt for payment made to North American Recovery on behalf of Merrick Bank.

52.     On or about July 9, 2025, Defendant responded to Plaintiff's dispute by forwarding Investigation Results, wherein Defendant again stated the disputed Austin Capital Bank, Merrick Bank, and Continental Fin Co accounts were verified as accurate by the credit

10

grantors, and thus remained. Upon review of his credit report, Plaintiff discovered a new collection account had been added by Central Portfolio Control.

53. On or about July 9, 2025, Plaintiff filed a third FTC Identity Theft Affidavit.

54. On or about August 4, 2025, Plaintiff sent a dispute letter to Defendant. In this letter, Plaintiff again disputed the Austin Capital Bank and Merrick Bank accounts as fraudulent accounts opened without his knowledge or permission, and the Celtic Bank/Contfinco account as inaccurately reporting as 30 days late in March 2025, when it was never late. Plaintiff also disputed the new collection account reported by Central Portfolio Control, Account Number PLZ330936, on behalf of NetCredit. Plaintiff informed Defendant NetCredit was a fraudulent account opened in Plaintiff's name without his knowledge. With this letter, Plaintiff again included a copy of the police report he filed, a copy of the payment receipt to North American Recovery, on behalf of Merrick Bank, and a copy of the FTC Identify Theft Report he filed on July 9, 2025.

55. Defendant received Plaintiff's dispute letter on August 14, 2025.

56. On August 21, 2025, at 12:00 p.m., Defendant sent Plaintiff an email stating its dispute results were available online.

57. On August 21, 2025, at 12:46 p.m., Defendant sent Plaintiff a second email stating it refused Plaintiff's request to block the fraudulent accounts on his credit report because Defendant determined Plaintiff's request was made in error, was based on a material misrepresentation, had obtained goods or services from one or more of the account he was trying to block.

58. On or about August 21, 2025, Plaintiff attempted to access Defendant's Dispute

11

Results but was told, "Your dispute results are currently not available online," and under the "Messages from Your Experian Specialist" section, Defendant instructed Plaintiff to refer to his credit report. The credit report provided by Defendant reported the Austin Capital Bank, Celtic Bank/Contfinco, and Merrick Bank accounts as "Under Dispute."

59.     On or about September 8, 2025, Defendant forward Plaintiff Investigation Results, wherein Defendant informed Plaintiff the disputed Austin Capital Bank, Merrick Bank, and Continental Fin Co accounts were each verified as accurate and updated.

60.     To date, Defendant continues to refuse to remove the fraudulent Austin Capital Bank, and Merrick Bank accounts from Plaintiff's Experian credit file and continues to incorrectly report the Accounts as belonging to Plaintiff. Additionally, Defendant continues to inaccurately report the Celtic Bank/Continental Fin Co account as 30 days late in March 2025.

61.     Plaintiff is working to purchase a home for his family, but Defendant's continued refusal to block the fraudulent accounts from Plaintiff's credit report and its refusal to correct the inaccurate Celtic Bank/Continental Fin Co account is preventing Plaintiff from being able to purchase a home.

62.     Defendant repeatedly failed to make a reasonable investigation into Plaintiff's disputes.

63.     Defendant repeatedly refused to block fraudulent accounts from Plaintiff's credit report despite receipt of a police report and FTC Fraud Affidavit.

64.     Upon receipt of the ACDV responses, Defendant simply accepted the furnisher's verifications of the Accounts and did not undertake to perform any investigation of its own.

65. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

66. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

67. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

68. The Plaintiff adopts the averments and allegations of paragraphs 15 through 67

13

hereinbefore as if fully set forth herein.

69. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

70. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

71. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, delayed in purchasing a home, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, family discord, time spent trying to fix his Experian credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses.

72. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

73. In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

74. Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

75. The Plaintiff adopts the averments and allegations of paragraphs 15 through 74 hereinbefore as if fully set forth herein.

76. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

77. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

78. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

79. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, delayed in purchasing a home, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, family discord, time spent trying to correct his Experian credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses.

80. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

81. In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

82. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

83. Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o C T Corporation System
2 Office Park Court, Suite 103
Columbia, South Carolina 29223